**Edward L. RICHARDSON, Plaintiff–Appellant,**

v.

**Chuck PENFOLD and Edward Dyer, Defendants–Appellees.**

No. 87–1177.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1987.

Decided Feb. 24, 1988.

Rehearing and Rehearing En Banc Denied March 29, 1988.

---

Candice Lichtenfels Addis, South Bend, Ind., for plaintiff-appellant.

David L. Steiner, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.

Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and WILL, Senior District Judge.[*]

BAUER, Chief Judge.

The appellant, Edward L. Richardson, is an inmate at the Indiana State Prison, Michigan City, Indiana. He appeals from the district court's summary judgment for the appellee, 650 F.Supp. 810, Edward Dyer, a prison official, on Richardson's Section 1983 claim, which charges Dyer with failing to protect him from sexual assaults by fellow inmates. We reverse.[1]

According to Richardson's complaint, he received threats and verbal assaults from other inmates on January 9 or 10, 1983. He claims that he notified Dyer of these threats. Dyer, a sergeant, was in charge of the 8 a.m. to 4 p.m. shift on the A & O Unit where Richardson resides. On January 11, 1983, Richardson began working as a porter on another unit, the IDU Lock–Up Unit, which allowed him out of his cell from 5 a.m. to 7 p.m. Leon Birch, an inmate porter on the A & O Unit, approached Richardson's cell and allegedly demanded that Richardson have sex with him. Birch also threatened to kill Richardson if he reported the rape. Later that same day, along with fellow inmates Alvin Staggers and Roderick Gilliam, Birch attacked Richardson in his cell, forcing him to have sex with Birch. No prison officials were present. Richardson sustained cuts and bruises on his lips, ribs and arms. On January 12 or 13, Richardson told Dyer about the rape but did not reveal his attackers' identities for fear of retaliation. According to Richardson, Dyer told him there was nothing Dyer could do if Richardson did not reveal the names of his attackers. Richardson also alleges that he told Dyer that he did not want to leave his cell for any reason whatsoever. Richard-

---

[*] The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

1. In his original complaint, Richardson named Chuck Penfold, another prison official, as a co-

defendant and alleged other constitutional violations under the first and fourteenth amendments. Richardson does not appeal the district court's resolution of these issues and we therefore do not address them.

son, however, continued to work as a porter.[2]

On January 19, Richardson repeated his wish to remain in his cell. As Dyer came by Richardson's cell to allow him out during the recreation period, Staggers and Birch were standing by Richardson's cell and asked Dyer to let them into the cell to retrieve some of their property which they claimed was in his cell. Richardson protested and followed Dyer down the stairs, pleading with him to take him out of the cellblock so that he would not be left alone with Birch and Staggers. Dyer refused, and left the unit, leaving Richardson behind. Staggers then forced Richardson back into his cell where Birch raped Richardson again.[3]

On January 21, Birch told Richardson that he had "sold" him to Roderick Gilliam, another inmate, for $100.00. That evening, Staggers attacked Richardson and shoved him into Gilliam's cell where Gilliam raped him. Officer Seiffers, a prison official, had arrived at the end of this incident and offered to help Richardson. Eventually, as a result of Seiffers's intervention, prison authorities disciplined Gilliam and Birch.[4]

On October 12, 1983, Richardson, acting pro se, filed this action under 42 U.S.C. § 1983. He alleges that Dyer violated his constitutional rights by failing to protect him from sexual assaults by other inmates. Construing Richardson's complaint liberally, *Caldwell v. Miller*, 790 F.2d 589, 595 (7th Cir.1986), it appears to allege violations of his eighth and fourteenth amendment rights.[5] Specifically, Richardson alleges that Dyer acted with "deliberate indifference" toward him by failing to protect him from assault. On October 17, 1986, the defendants filed a motion for summary judgment, which included the affidavits of both defendants. In support of

his opposition to Dyer's motion for summary judgment, Richardson filed an affidavit by inmate Staggers which stated that Birch and Gilliam "had an arrangement with sarge[a]nt Dyer the Officer in Charge of the A & O Unit to let them have sex [with] any new kid they wanted to have sex with in return for information of contraband on the Unit," and that Chuck Penfold, another prison official, knew and agreed with this policy. The district court granted Dyer's motion for summary judgment.

To prevail on a motion for summary judgment, the moving party must demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. FED.R.CIV.PRO. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Herman v. National Broadcasting Co.*, 744 F.2d 604, 607 (7th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985). In determining whether a genuine issue of material fact exists, the court must construe the facts alleged in the light most favorable to the party opposing the motion for summary judgment. *Id.* Upon review of a summary judgment, we must consider the entire record in the same light. *Cedillo v. International Assoc. of Bridge & Iron Workers*, 603 F.2d 7, 11 (7th Cir.1979). We do not believe that Dyer has met his burden. Richardson has made "a sufficient showing" on the essential elements of his case, *Celotex*, 106 S.Ct. at 2553, to demonstrate genuine issues of material fact that must be heard before a court can fairly resolve this case.

▆▆▆▆ The "reigning" law in this circuit under the eighth amendment states that a prison official will be liable for failing to protect an inmate from attacks if that official acts with "deliberate indifference."

---

**2.** The record is unclear as to whether Richardson voluntarily continued to work as a porter.

**3.** Dyer denies that any of these events occurred. For purposes of summary judgment, however, we must accept Richardson's allegations as true.

**4.** Again, the record is unclear, but Richardson claims that Gilliam and Birch were "locked up" for a few hours before the prison officials re-

leased them and returned them to their former porter jobs.

**5.** In fact, Richardson's eighth amendment claim actually falls under the fourteenth amendment as well through the doctrine of incorporation. *See, e.g., Lewis El v. O'Leary*, 631 F.Supp. 60, 61 n. 2 (N.D.Ill.1986).

*Duckworth v. Franzen,* 780 F.2d 645, 652 (7th Cir.1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986); *Walsh v. Brewer,* 733 F.2d 473, 476 (7th Cir.1984). Similarly, a prison official who acts with "deliberate or callous indifference" toward inmates violates the due process clause of the fourteenth amendment. *Anderson v. Gutschenritter,* 836 F.2d 346 (7th Cir. 1988); *Shelby County Jail Inmates v. Westlake,* 798 F.2d 1085, 1094 (7th Cir. 1986). A plaintiff can show "deliberate indifference" by proving that the prison official acted with actual intent or recklessness. *Little v. Walker,* 552 F.2d 193, 197 n. 8 (7th Cir.1977), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978). "A defendant acts recklessly when he disregards a substantial risk of danger that either is known to him or would be apparent to a reasonable person in his position." *Benson v. Cady,* 761 F.2d 335, 339 (7th Cir.1985).

■ The district court concluded that Dyer's conduct did not constitute "deliberate indifference" and granted Dyer's motion for summary judgment. The district court noted that although the parties' affidavits "indicate [a] disagreement which appears to be somewhat compounded by the Alvin Staggers affidavit," Dyer could not have acted with "deliberate indifference" when he allowed Staggers and Birch into Richardson's cell on January 19 because Richardson did not reveal the names of his attackers to Dyer.

In so ruling, the district court relied primarily on the Supreme Court's recent decision in *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). In that case, a threatened inmate, Davidson, gave a note to a prison official describing a threat by another inmate and identified that inmate. The prison official read the note and sent it to another official, who neither read it nor notified others about it. Two days later, the named inmate beat and injured Davidson when both prison officials

were off duty. On appeal, Davidson claimed that the prison officials "negligently failed to protect him from another inmate" in violation of the due process clause of the fourteenth amendment. *Davidson,* 474 U.S. at 347, 106 S.Ct. at 670. The Supreme Court held that negligent conduct of a prison official which causes an unintended injury to a prisoner does not implicate the due process clause of the fourteenth amendment. *Id. See, also, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

Relying on *Davidson,* the district court found that Dyer did not act with "deliberate indifference." The district court reasoned that the conduct alleged in *Davidson* "is considerably more egregious than that shown by the record in this case" because Davidson identified his attacker to the prison officials, and the Supreme Court did not find a constitutional violation in *Davidson.* This conclusion, however, demonstrates a fundamental misunderstanding of the Court's opinion in *Davidson.* In *Davidson,* the only allegation before the Court on review was whether the prison official's *negligent* conduct violated Davidson's fourteenth amendment rights. *Davidson,* 474 U.S. at 346–47, 106 S.Ct. at 699–70. In fact, Davidson did not challenge the district court's finding that the prison officials "did not act with deliberate or callous indifference" towards Davidson. *Id.* at 347, 106 S.Ct. at 670. Thus, the Supreme Court never had occasion to consider whether the prison official's conduct was anything but negligent and the district court's reliance on *Davidson* for its decision was misplaced.[6]

The district court also failed to consider adequately Staggers's affidavit. The district court apparently thought the allegation contained in Staggers's affidavit was not material because it did not refute the "critical" fact that Richardson refused to reveal names. Although this may be true, Staggers's affidavit certainly raises a genuine issue of material fact on an essential

---

6. Despite this inappropriate comparison to *Davidson,* we do note that in *Davidson,* the inmate's letter to the prison authorities was reasonably understood more as an effort to protect his reputation rather than a plea for help as is the case here. *Davidson,* 474 U.S. at 346, 106 S.Ct. at 669–70.

element of Richardson's case: Dyer's state of mind. If Staggers's testimony is true, a jury could permissibly infer that Dyer knew that Birch was raping inmates, including Richardson, but deliberately chose to ignore this in exchange for information on contraband.

The importance of Staggers's affidavit is even more obvious in light of Richardson's allegations that, within a span of 10–11 days, other inmates assaulted and raped him three times, and that he sought help from Dyer four times, including a plea to Dyer on January 19 not to leave him alone with Birch and Staggers. Because the affidavit, if credible, reveals that Dyer knew that Birch and Gilliam raped others, it creates a strong inference that Dyer should have known that Richardson had reason to fear Birch and Gilliam. Thus, no "critical" question of whether Richardson actually revealed names of his attackers to Dyer exists. According to Staggers's affidavit, Dyer *did* know that Birch and Gilliam raped inmates. Even if Dyer could not reasonably know that Birch raped Richardson the first time, a jury could reasonably conclude that he deliberately chose to allow Birch into Richardson's cell after Richardson had already reported one rape and begged Dyer to protect him from another. Based on Staggers's and Richardson's allegations, a jury could have reasonably found that Dyer had shown indifference to the rapes of Richardson or a willingness to allow the attacks after learning of a strong likelihood that Richardson would be raped. *Gutschenritter*, 836 F.2d 346.

Considering the evidence in the light most favorable to Richardson, we conclude that the record discloses a genuine issue of material fact regarding Dyer's knowledge of the danger to Richardson. We therefore reverse the district court and remand for further consideration in light of our decision.